S. H. SORNBERGER, PLAINTIFF IN ERROR, v. MARTIN B. BERGGREN ET AL., DEFENDANTS IN ERROR.

**Landlord and Tenant** : CONTRACT OF PURCHASE : FORFEITURE : EMBLEMENTS. One S. took an assignment of a contract of purchase of certain railroad lands and rented said lands to a tenant for a share of the crops. The contract of purchase contained a provision that in case of the failure of the purchaser or his assignees to make payments thereon, "and each of them punctually and upon the strict terms and times above limited, and likewise perform and complete all and each of his agreements and stipulations aforesaid, strictly and literally without any failure or default so far as it may bind said first party, shall become utterly null and void," etc. *Held*, 1st, that the rights of the vendor did not terminate until there was an actual forfeiture; 2d, that where the vendor had been in default for a number of years, and had by his tenant sowed a crop before a forfeiture of his estate in the land, such forfeiture before the crops were ripe did not deprive him of his interest in said crops.

ERROR to the district court for Saunders county. Tried below before POST, J.

*S. H. Sornberger, pro se.*

*N. H. Bell,* for defendant in error.

MAXWELL, CH. J.

This is an action of replevin to recover a quantity of wheat, the answer being a general denial. A jury was waived by the parties, and the cause submitted to the court, which found in favor of the defendants. The principal objection is that the finding and judgment are not supported by the evidence.

S. H. Sornberger, for the plaintiff, testified that in the fall of 1875, he owned certain lands in Saunders county, among which was the southeast quarter and the south half of the northeast quarter of section 29, town 15, range 8—

the latter described land being 240 acres, bought from Emma C. Kelley by the plaintiff, by the assignment to plaintiff of contracts of sale of the same land to the said Emma C. Kelley from the Union Pacific Railroad Company. The contracts were admitted in evidence, together with the assignments, and were in substance as follows:

"On the 25th day of July, 1873, the Union Pacific Railroad Company, in consideration of the payment of ten per centum of the purchase price, and ten subsequent annual payments, thereafter stipulated to be made, agree to sell to the said Emma C. Kelley the lands aforesaid, and on final payment of the full purchase price, in strict accordance with the terms of the contract, to execute and deliver to her or her assigns a warranty deed to said premises."

Embraced in said contract of sale was the following covenant: "And in case the second party shall fail to make the payments aforesaid and each of them punctually and upon the strict terms of times above limited, and likewise perform and complete all and each of her agreements and stipulations aforesaid, strictly and literally without any failure or default, then this contract, so far as it may bind said first party, shall become strictly null and void, and all rights and interests hereby created or then existing in favor of or derived from the second party shall utterly cease and determine, and the right of possession and all equitable and legal interests in the premises hereby contracted, with all the improvements and appurtenances, shall revert to and revest in said first party, without any declaration of forfeiture or act of re-entry, or any other act by said first party to be performed, and without any right of said second party of reclamation or compensation for moneys paid or services performed, as absolutely, fully, and perfectly as if this contract had never been made. And said party of the first part shall have the right immediately, upon the failure on the part of the second party to comply with the stipulation of this contract, or any part thereof, to enter upon the

land aforesaid, and take immediate possession thereof without process of law, together with the improvements and appurtenances thereunto belonging.

"And the said party of the second part covenants and agrees that she will surrender unto the said party of the first part the said land and appurtenances, without delay and hindrance, and no court shall relieve the party of the second part from a failure to comply strictly and literally with this contract."

The assignment from Emma C. Kelley to the plaintiff was in writing, and approved by the Union Pacific Railroad Company's land commissioner.

S. H. Sornberger further testified that in the fall of 1875 he leased all his lands, including this, to one William Cameron, who thereupon went into the possession of the same, and continued in the possession of the same until in the fall or winter of 1880, as the tenant of the plaintiff, working the above land, and accounting to the plaintiff for the rents.

That in the fall of 1880 the Union Pacific Railroad Company attempted to sell this land to the defendant, and that the plaintiff was informed by Cameron that Berggren was claiming the rent of the place for that year, 1880. That the plaintiff went promptly to the premises, while Cameron was threshing the grain which was grown on the premises, and claimed, and Cameron delivered, the wheat in controversy to the plaintiff, by putting the same in a bin in a granary belonging to the plaintiff, on an adjoining piece of land of the plaintiff; the same being one-fourth of the grain so grown on said premises, and being the rent for said premises for 1880. That a few days afterwards Berggren and Graham, the defendants, went to this granary and took this identical wheat, and carried it away and sold it. That there were 88 bushels of it, and it was then worth the sum of 65 to 70 cents per bushel. Plaintiff never got the wheat.

26

On cross-examination Mr. Sornberger testified that he had no recollection of any notice of the cancellation of the contracts for the sale of the land by the company.

The defendant offered M. B. Berggren, one of the defendants, as a witness, who testified that on the 26th day of June, 1880, he purchased the land described by Mr. Sornberger in his testimony from the Union Pacific Railroad Company, upon a contract similar in terms to the terms of one from the said company to Emma C. Kelley, which contracts were admitted in evidence by the court, over the objection of the plaintiff, on the ground that the same were immaterial and irrelevant, and for the reason that no proper foundation had been laid for their introduction, to which the plaintiff excepted. Over the same objection by plaintiff, he was permitted to testify that he did not dispose of the same during the year 1880. That at the time of the purchase of the same from the company the agent of the company agreed to give him the right to the rent for 1880. That he notified Cameron that he looked to him for the rent. That when Cameron threshed the grain in the fall of 1880 he went there and demanded the same, but that Mr. Sornberger, the plaintiff, was there and got the grain, and he did not then get it. That a few days thereafter the defendants went to the premises of the plaintiff, and took the wheat in controversy from the granary of the plaintiff, where it had been stored by the man Cameron, it having been divided out as the one-fourth part of the grain grown on the premises aforesaid; that they took it under a "writ" issued by some justice of the peace, but which writ was neither offered or received in evidence, and its nature is unknown.

On cross-examination he testified that he knew that Cameron had been for years leasing this land, and had been paying rent therefor to the plaintiff; that at the time he purchased, in June, the wheat in controversy was almost ready to harvest; that all that Cameron did by way of de-

livering it to Berggren as rent was that on demand of defendant Graham he told in what bin the wheat was, and the defendants took it and carried it away, and sold it.

J. B. Davis testified, over the objection above stated, that he was, in 1879 and 1880, the local land agent of the Union Pacific Railroad Company for Saunders county, for the sale of the company's lands; that it was his recollection that Mr. Sornberger was informed that the contract for the land on which the grain was grown was cancelled; that it was his recollection that he was the person who informed him, and that it was either late in 1879 or early in 1880; also that Mr. Cameron knew of a cancellation some time in March, 1880. That at that time he, Cameron, agreed to deliver to the company, or to whomsoever it should direct, one-fourth of the crop. That after Berggren bought the land, at a conversation between Cameron, witness, and Berggren, it was witness' recollection that Mr. Cameron agreed to deliver to Berggren the share which he had previously agreed to deliver to the company.

On cross-examination he stated that the notice which he gave of the cancellation of the contracts was neither in writing or printed, nor was he able to state time or place where notice was given, further than that it was a verbal notice, which he had given plaintiff some time during the winter. And the cross-examination elicited the fact that the contract which Cameron had made with him, as agent of the company, was simply that he had notified him that the company had cancelled the contracts, that they would look to him for the rent, and that Cameron had said that he had as soon pay the rent to them as to Sornberger.

N. B. Berggren, brother of one of the defendants, also testifies that he heard the contract between his brother and Cameron, and that it was agreed that the grain in question was to go to M. B. Berggren.

That a cause of forfeiture existed for a considerable period prior to June, 1880, is clearly shown by the proof. The

vendor, however, had not availed itself of the privilege, and so long as it failed to do so the right of the vendee to the possession of the land continued.    In this case he had actual possession, by his tenant, who had sown the wheat in the spring of 1880, a portion of the product of which is the matter in controversy in this case.

At common law, which prevails in this state, a tenant who sows or plants a crop, where it is not possible for him to know that his estate will terminate before the crop can ripen, and it does terminate before, is entitled to harvest and secure the crop at maturity.    This rule is applied to tenants for life and tenants at will, unless the title under which they claim contains some express provision to the contrary.    Co. Litt., 556.    2 Bla. Com., 122.    1 Cruise Dig., 109–110.    *Whitmarsh v. Cutting*, 10 John., 361. *Bain v. Clark*, 10 John., 428.    Bingham on Real Estate, 539.

In *Stewart v. Doughty*, 9 John., 108, where A let to B a farm for six years, and it was agreed that either party might put an end to the lease on giving to the other six months' notice; but if A gave notice to B to quit, he was to allow B for preparing the ground for seed, and for any extra labor, etc., in the autumn of 1884 B sowed the ground with wheat, rye, etc., and in the February following A gave notice to B to quit.    The court held that as the lease had been terminated by the lessor while the crops were in the ground, the lessee was entitled to emblements. It is said (p. 112): "The doctrine of emblements is founded on the clearest equity and the soundest policy, and ought to receive a liberal encouragement."

In *Debow v. Titus*, 5 Halstead, 128, a minister being the tenant of the parsonage land, and while in possession sowed the land with grain, and then sold the crop, but before the grain was ripe voluntarily ceased to be pastor of the church, but left the premises and removed to another congregation, it was held that the purchaser could not recover

the crop. It is said: "He who has an estate or interest in lands, the duration of which is uncertain in point of time, and he who has such an estate as may perhaps continue until the grain is ripe, shall, if he sows the land, be permitted, or his executors or administrators in case of his decease, to enter upon it and harvest and reap the crop," unless by his own act he terminates the tenancy.

In this case, although a cause of forfeiture existed at the time the wheat in question was sown, still there had been no actual forfeiture, and his estate continued until such forfeiture took place. The plaintiff therefore had a right by his tenant to sow the wheat in question, and his estate being terminated after said crop was sown, but before it was ripe, he was entitled to harvest the same.

The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.